## POPE *v.* McKENZIE.

---

PATENTS; INTERFERENCE; REISSUES; BURDEN OF PROOF.

1. A party to an interference, whose application, filed June 20, 1908, was for the reissue of a patent granted him April 30, 1907, upon an application filed December 30, 1905, is entitled to the date of his original application, and where the application of the other party was filed December 13, 1906, he is a junior party, charged with the burden of overcoming the senior party's prima facie case.

The party to an interference who was the first to file an allowable application is not put to his proof until his adversary shall have introduced evidence showing his own independent conception of the invention prior to that date (following *Mills* v. *Elliott*, ante, 95); and the junior party cannot defeat the right of the senior party by showing that a third person, not a party to the proceeding, was the real inventor. (Following *Foster* v. *Antisdel*, 14 App. D. C. 552.)

No. 738. Patent Appeals. Submitted November 17, 1911. Decided January 2, 1912.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case. *Affirmed.*

The facts are stated in the opinion.

*Mr. Frederick W. Winter* for the appellant.

*Mr. Albert M. Austin* and *Mr. Arthur P. Greeley* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

Frederick Pope appeals from a decision of the Commissioner of Patents, awarding priority to Malcolm McKenzie in an interference proceeding between them as applicants for a patent for an apparatus for distilling wood. The issue is in three counts as follows:

"1. An apparatus for the extraction of turpentine, etc., from wood comprising a closed vessel for the reception of wood to be treated, provided with an inlet and outlet for the bath and combined products respectively, a vessel for the reception of the bath and combined products, means for circulating the bath between the two vessels, means for introducing steam into the bath in the second-named vessel, means for condensing the vapors from the second-named vessel, and means for reheating the bath on its return from the second-named vessel to the first-named vessel.

"2. An apparatus for the extraction of turpentine, etc., from wood, comprising a vessel for the reception of the wood to be treated, provided with inlet and outlet for the bath and combined products respectively, a vessel for the reception of a portion of the bath with which the wood has been treated, means for circulating a portion of the bath between the two vessels, means for introducing steam into the portion of the bath in the second-named vessel to remove the extracted products, and means for condensing all the vapors from the second-named vessel.

"3. An apparatus for extracting products from wood, a retort in which the wood is to be treated with a bath, a vaporizing

chamber connected to the retort, means for maintaining pres-
sure in said retort, means for circulating the bath from the retort
to the vaporizing chamber and return, and means for heating
the bath on its way back to the retort."

McKenzie's application filed June 20, 1908, is for the re-
issue of a patent granted to him April 30, 1907, upon applica-
tion filed December 30, 1905. Pope's application was filed
December 13, 1906.

McKenzie is entitled to the date of his original application.
Pope is, therefore, the junior party, and charged with the bur-
den of overcoming his adversary's prima facie case. E. B.
Weed was the forerunner of the parties in this particular art.
He had organized a corporation in New York for the purpose
of distilling turpentine in North Carolina. Early in the year
1903, Malcolm McKenzie, his brother Angus, and some asso-
ciates of theirs, had purchased stock in the corporation. The
McKenzies were made members of the board of directors, Angus
becoming president and Malcolm general manager. Pope was
employed by the corporation, in June, 1904, became superin-
tendent, and resigned or was discharged in May, 1905.

In our view of the point upon which the case turns, it is
unnecessary to enter into a discussion of the particular mean-
ing of the issue or the sources of the several counts thereof,
or of the dates of conception, disclosure, reduction, etc., al-
leged in the preliminary statements. The Examiner of Inter-
ferences decided in favor of Pope. He first reviewed the evi-
dence on behalf of McKenzie, and held it insufficient to show
that he had made the invention prior to his filing date. While
not expressly so holding, the inference is strong that he regarded
McKenzie as deriving his knowledge of the invention from
Weed, who died before this controversy arose. Reviewing the
evidence on behalf of Pope, he found it sufficient to show that
he had knowledge of the invention before McKenzie, and had
therefore discharged the burden of proof. He evidently thought
that Pope derived the idea of the invention from Weed, though
he may have improved thereon. He refers to the claim of Mc-
Kenzie, that Pope derived his information from Weed; but

holding that McKenzie had failed to show that he had given the original idea to Weed to work out, he held that this was inadmissible, under the rule declared in *Foster* v. *Antisdel,* 14 App. D. C. 552. The Examiners in Chief (two members sitting) reversed this decision. They regarded the proofs of each party as unsatisfactory in respect to the matter of conception and reduction to practice, and gave to each the benefit of his filing date only. . Their decision was, therefore, that Pope had not sustained the burden of proof. They also held that both McKenzie and Pope had derived all of their information as to count 3 from Weed, and called the attention of the Commissioner to the fact that, for that reason, count 3 was not patentable to either party.

The Commissioner, passing the recommendation as to count 3, affirmed the decision in favor of McKenzie. He found that Pope had not established a conception of any one of the counts prior to McKenzie's filing date, and also, if given the date alleged in his statement, he could not recover because of laches. He concluded the discussion as follows: "The evidence in this case is such that the parties must, in effect, stand upon their respective filing dates, and on these McKenzie must prevail."

The conditions of this case are quite similar to those in the case of *Mills* v. *Darlington,* ante, 95. As indicated in that case, the one first to file an allowable application is not put upon his proof until his adversary shall have introduced evidence showing his own independent conception of the invention prior to that date. For the satisfactory reasons given in the opinion of *Foster* v. *Antisdel,* 14 App. D. C. 552–554, he cannot defeat the senior party's right by showing that a third person, not a party to the proceeding, was the real inventor. We agree with the Commissioner that Pope's evidence is not sufficient to show that he conceived the invention prior to the filing of McKenzie's invention. This being the case, it is unnecessary to review the evidence introduced by McKenzie to show that he conceived and reduced to practice the invention prior to filing his application.

For the reasons given, the decision must be affirmed. It is so ordered, and that this decision be certified to the Commissioner of Patents.                ·              .                *Affirmed.*